STATE OF NORTH CAROLINA v. TONY WAYNE DORTON

No. COA04-572

(Filed 16 August 2005)

## 1. Constitutional Law— right to speedy trial—delay not attributable to State—generalized assertions of diminished memory

The trial court did not err by failing to dismiss the charge of second-degree sexual offense as a result of an alleged violation of defendant's right to a speedy trial based on a twenty-month delay, because: (1) the trial court noted the numerous changes in defendant's attorneys and found additional delay was due to a backlog in testing at the SBI not attributable to the District Attorney's Office; (2) the trial court's uncontested finding of fact concerning the trial of cases with dates of offenses preceding that of defendant is an appropriate method of determining the order in which to dispose of cases; and (3) although defendant gave generalized assertions that there was some diminished memory that impaired his defense, the victim was able to testify and be cross-examined about the incident and the medical witnesses produced written records from which they testified.

## 2. Witnesses— motion to sequester—parental and supporting figure

The trial court did not abuse its discretion in a second-degree sexual offense case by denying defendant's motion to sequester all of the State's witnesses, because: (1) the trial court allowed defendant's motion with respect to all witnesses except for the victim's mother who was permitted to remain with the victim in court; and (2) whether the victim had technically reached the age of majority does not obscure the trial court's reasoning that she was in need of a parental and supporting figure when the victim was sixteen years old at the time she was sexually and physically assaulted by her father.

## 3. Evidence— victim's previous sexual activity—credibility— Rape Shield Statute

The trial court did not abuse its discretion in a second-degree sexual offense case by denying defendant's request to inquire into the victim's previous sexual activity for the purpose of attacking her credibility as a witness, because the Rape Shield Statute lim-

its the scope of cross-examination by declaring such examination to be irrelevant to any issue in the prosecution except in four narrow situations inapplicable to the instant case.

**4. Evidence— letter from defendant to victim while incarcerated—sexual assault**

The trial court did not err in a second-degree sexual offense case by admitting into evidence a letter from defendant to the victim following the sexual assault while defendant was incarcerated, because: (1) defendant failed to preserve the evidentiary issue of the prejudicial effect and probative value of the letter for appellate review by failing to object on this ground at the time the evidence was introduced at trial; (2) defendant is not entitled to plain error review based on his failure to allege plain error in his assignments of error or in his brief; and (3) the probative value of the letter was not substantially outweighed by unfair prejudice when the letter could be read as an apology for precisely the events for which defendant was put on trial, and the meaning and intent of the letter were for the jury to determine.

**5. Criminal Law— prosecutor's argument—defendant admitted offenses—motion for mistrial**

The trial court did not err in a second-degree sexual offense case by denying defendant's motion for a mistrial following the State's opening statement informing the jury that defendant admitted these offenses, because: (1) where a trial court sustains an objection but defendant fails to move to strike that which was objectionable and fails to request a curative instruction, the trial court has taken sufficient action by sustaining defendant's objection and was not required either to strike the testimony or to give a curative jury instruction; and (2) the statement by the prosecutor accurately forecasted the evidence adduced at trial.

**6. Discovery— statement—take crime to grave**

The trial court did not err in a second-degree sexual offense case by allowing the victim to testify that defendant told the victim after the sexual assault that she needed to take this to the grave with her even though defendant contends the statement had not been disclosed, because: (1) a synopsis of a defendant's oral statements in response to discovery requests complies with the substance requirement under N.C.G.S. § 15A-903(a)(2); (2) the State's report to defendant contained the statement that defendant father told the victim not to tell anyone; and (3) both

STATE v. DORTON

[172 N.C. App. 759 (2005)]

the testimony received at trial and the statement contained in the report given to defendant convey that defendant was telling his daughter not to tell anyone of the sexual assault.

**7. Evidence— victim's demeanor—speculation**

The trial court did not err in a second-degree sexual offense case by allowing the victim's brother to testify that his sister looked like she did not want to talk to the police following the sexual assault but she did so anyway, because assuming arguendo that the trial court erred, defendant failed to show how this testimony affected the outcome of the trial or that a different result would have resulted absent the error.

**8. Sexual Offenses— second-degree—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree sexual offense at the close of all the evidence, because: (1) defendant does not specifically attack any of the elements of second-degree sexual offense but merely argues that there were inconsistencies and a lack of physical evidence to bolster the victim's testimony; (2) no case law stands for the proposition that there must be some physical evidence to support court testimony in order for that testimony to be sufficient to withstand a motion to dismiss; and (3) defendant had ample opportunity to cross-examine the victim with respect to any inconsistencies, and inconsistencies are expressly left for the jury.

**9. Sentencing— aggravating factor not submitted to jury— *Blakely* error**

The trial court erred in a second-degree sexual offense case by sentencing defendant in the aggravating range without submitting to the jury the aggravating factor found by the trial court that defendant took advantage of a position of trust or confidence to commit the offense, and the case is remanded for resentencing.

Appeal by defendant from judgment entered 13 February 2004 by Judge B. Craig Ellis in Scotland County Superior Court. Heard in the Court of Appeals 16 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Jason T. Campbell, for the State.*

*James M. Bell for defendant-appellant.*

CALABRIA, Judge.

Tony Wayne Dorton ("defendant") appeals a judgment entered on a jury verdict of guilty of second-degree sexual offense. Defendant received a sentence in the aggravated range with a minimum term of 92 months and a maximum term of 120 months in the North Carolina Department of Correction. We find no error regarding defendant's trial but remand for resentencing.

The State presented evidence that defendant and Pamela Dorton had two children during the course of their marriage. The eldest child (the "victim"), was sixteen years of age on 30 March 2002. Since school was out of session, the victim and her brother were at home on that date with their father, defendant, who was unemployed. Near midday, the victim checked the computer in her parents' room to see if she had received any e-mail. Defendant was dressed for an appointment with the Employment Security Commission but undressed and returned to bed while the victim was on the computer. After the victim finished on the computer, defendant asked the victim to lay down with him "to help him go back to sleep." Although reluctant, the victim complied. Defendant turned to the victim, began rubbing her on her side, and repeatedly asked her to engage in oral sex with him in increasingly demanding tones. Defendant then pinned the victim down and began to digitally penetrate her. The victim began crying and attempted to stop him. This angered defendant, and he started hitting her. In her distress, the victim urinated on herself. As a result, defendant let the victim go to the restroom.

While the victim was in the restroom, defendant entered and again attempted to force the victim to engage in sexual activity with him. When the victim told defendant that he "would have to kill her first," defendant forced the victim back into the bedroom and removed her clothes, resumed hitting her, and attempted to engage in both oral and vaginal sex with the victim; however, defendant's attempts were hampered due to the fact that he suffered from erectile dysfunction. The victim testified that throughout the event, defendant responded to her attempts to thwart his advances by hitting her with his hands and a shoe and choking her.

After defendant finished, he returned to the bathroom, and the victim retrieved her clothes and dressed. Defendant subsequently left for his appointment. The victim called her mother, who instructed the victim to call the police. The victim complied, and the police obtained a statement from her and took her to the hospital, where a rape kit was performed.

Defendant was arrested and indicted for second-degree rape and second-degree sexual offense. On 17 June 2002, defendant moved for a speedy trial. On 27 October 2003, defendant moved to dismiss the pending charges for denial of a speedy trial. In denying defendant's motion, the trial court noted that between 18 September 2002 and May of 2003, defendant had changed attorneys three times, the SBI lab tests were delayed due to a backlog in testing not attributable to the District Attorney's office, and, between March of 2003 and the following September session of Superior Court, the cases tried by the District Attorney's office predated defendant's case. The jury returned a verdict of guilty for second-degree sexual offense and a verdict of not guilty for second-degree rape. Defendant was sentenced as noted *supra* and appeals.

I. Right to Speedy Trial

[1] In his first assignment of error, defendant asserts the trial court erred in failing to dismiss the charges as a result of the violation of his right to a speedy trial. The right to a speedy trial is guaranteed both by the Sixth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment, and Article I, Section 18 of the North Carolina Constitution, and our analysis of each is the same. *State v. Hammonds*, 141 N.C. App. 152, 157-58, 541 S.E.2d 166, 171-72 (2000). Analysis of whether a defendant's right to a speedy trial has been violated is based on a case-by-case balancing of the following four factors: "(1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant resulting from the delay." *Id.*, 141 N.C. App. at 158, 541 S.E.2d at 172. Since the length of delay in the instant case was twenty months, it is presumptively prejudicial and triggers examination of the other three factors. *See State v. Webster*, 337 N.C. 674, 679, 447 S.E.2d 349, 351 (1994) (noting that a sixteen-month delay "is clearly enough to cause concern and to trigger examination of the other factors"). In doing so, however, we are mindful that "the length of delay is viewed as a triggering mechanism for the speedy trial issue," and, therefore, " 'its significance in the balance is not

great.' " *Hammonds*, 141 N.C. App. at 159, 541 S.E.2d at 172 (quoting *State v. Hill*, 287 N.C. 207, 211, 214 S.E.2d 67, 71 (1975)).

A. Reason for Delay

In examining the second factor, a "defendant has the burden of showing that the delay was caused by the neglect or wilfulness of the prosecution[,] [which may be rebutted with] evidence fully explaining the reasons for the delay." *State v. Spivey*, 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003). Prohibited are delays that are purposeful or oppressive and could have been avoided by reasonable effort, not "good-faith delays which are reasonably necessary for the State to prepare and present its case." *State v. Johnson*, 275 N.C. 264, 273, 167 S.E.2d 274, 280 (1969) (citations omitted).

In the instant case, the trial court noted the numerous changes in defendant's attorneys between September of 2002 and May of 2003. Moreover, the trial court found additional delay was "due to a backlog in testing at the SBI" not "attributable to the District Attorney's office." Defendant contends "it is immaterial whether the delay was caused by law enforcement or the District Attorney because, in either case, such delay should be attributable to the State." However, our Supreme Court indicated in *Spivey* that this expanded attribution to the State is improper by noting that the defendant's burden was to show prosecutorial neglect or willfulness. *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255. *See also id.*, 357 N.C. at 127, 579 S.E.2d at 260 (Brady, J., dissenting) (focusing the analysis of the second factor on the "elected District Attorney" and noting that "the district attorney's indifference toward defendant is evidence of precisely the type of neglect that reflects a violation of a defendant's right to a speedy trial"). Finally, we note the trial court's uncontested finding of fact (concerning the trial of cases with dates of offenses preceding that of defendant) is an appropriate method of determining the order in which to dispose of cases. *See Spivey*, 357 N.C. at 120, 579 S.E.2d at 255 (observing that the district attorney had "dealt with cases in chronological order, beginning with the oldest [and] [d]efendant's case was tried based on this policy"). These reasons indicate defendant failed to show that the State willfully or neglectfully delayed defendant's trial.

B. Assertion of Right to Speedy Trial

Defendant did assert his right to a speedy trial early in the process; accordingly, this factor balances in favor of defendant's assignment of error. However, we note that the "assertion of the

right, by itself, d[oes] not entitle [a defendant] to relief." *Id.*, 357 N.C. at 121, 579 S.E.2d at 256.

C. Resulting Prejudice

Prejudice to defendant as a result of delay concerns the following three objectives: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532, 33 L. Ed. 2d 101, 118 (1972). The test for prejudice is "whether significant evidence or testimony that would have been helpful to the defense was lost due to delay[,]" *see State v. Jones*, 98 N.C. App. 342, 344, 391 S.E.2d 52, 54-55 (1990), as opposed to "claims of faded memory and evidentiary difficulties inherent in any delay." *State v. Goldman*, 311 N.C. 338, 345, 317 S.E.2d 361, 365 (1984). Defendant's assertions are precisely those diminished in *Goldman* in that defendant only gives generalized assertions that there was some "diminished memory" and, therefore, defendant's defense was impaired. Moreover, while defendant cites to certain portions of the testimony of medical witnesses and the victim concerning things they could not remember, we note (1) the victim was able to testify and be cross-examined as to the incident and (2) the medical witnesses produced written records from which they testified. Accordingly, this factor weighs against defendant. In balancing the four factors together, we do not find defendant's constitutional right to a speedy trial was impermissibly transgressed. This assignment of error is overruled.

II. Failure to Sequester the Victim's Mother

[2] Defendant, in his second assignment of error, asserts the trial court erred in denying his motion to sequester all of the State's witnesses. The trial court allowed defendant's motion with respect to all witnesses except for the victim's mother, who was permitted to remain with her in court. Sequestration of witnesses " 'rests within the sound discretion of the trial court, and the court's denial of the motion will not be disturbed in the absence of a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Hyde*, 352 N.C. 37, 43, 530 S.E.2d 281, 286 (2000) (quoting *State v. Call*, 349 N.C. 382, 400, 508 S.E.2d 496, 507-08 (1998)).

In allowing the victim's mother to remain with the victim, the trial court stated it thought "it would be appropriate to have her mother" and later noted that because the victim was a minor, it was

"appropriate to have a parent present." Defendant points out that the victim ·was not a minor at the time of trial since she was eighteen years old; therefore, the trial court's ruling was arbitrary. We are not persuaded.

First, at the time the trial court ruled on defendant's motion, defendant did nothing to bring to the trial court's attention the fact that the victim had, in fact, reached her majority. Independently, and more importantly, whether the victim had technically reached her majority does not obscure the trial court's reasoning. The evidence at trial tends to show the victim was sixteen years old when she was sexually and physically assaulted by her father and remained a teenager of eighteen years at the time she was testifying against her father about the details of that assault. The victim's need, under such circumstances, of a parental and supporting figure cannot be gainsaid. Because the trial court's ruling was the result of a reasoned decision, we perceive no abuse of discretion in allowing the victim's mother to remain with the victim under these circumstances. This assignment of error is overruled.

III. Rule 412

**[3]** By his next assignment of error, defendant contends the trial court improperly denied him the right to inquire into the victim's previous sexual activity for the purpose of attacking her credibility as a witness. While a defendant clearly is entitled to cross-examine an adverse witness, the scope of that cross-examination lies within the "sound discretion of the trial court, and its rulings thereon will not be disturbed absent a showing of abuse of discretion." *State v. Herring*, 322 N.C. 733, 743-44, 370 S.E.2d 363, 370 (1988). When cross-examination involves the sexual behavior of the complainant, our Rape Shield Statute further limits the scope of cross-examination by declaring such examination to be " 'irrelevant to any issue in the prosecution' except in four very narrow situations." *Id.* (quoting N.C. Gen. Stat. § 8C-1, Rule 412 (2003)).

In the instant case, defendant neither cites to nor argues the substance of any of the four exceptions. Rather, defendant asserts he "simply wanted to attack [the victim's] credibility as a witness . . . ." Defendant's arguments fail to bring the sought testimony within any of the four exceptions to the Rape Shield Statute and appears to be directly in conflict with our Supreme Court's holding in *State v. Autry*, 321 N.C. 392, 398, 364 S.E.2d 341, 345 (1988) (noting that, because a "victim's virginity or lack thereof does not fall

within any of the four exceptions[,]" it is an area "prohibited from cross-examination by Rule 412[,]" and the rule does not violate a defendant's right to confront an adverse witness). This assignment of error is overruled.

IV. Letter

**[4]** Defendant's fourth assignment of error concerns the trial court's admission into evidence of a letter from defendant to the victim following the sexual assault while defendant was incarcerated. The letter, addressed to "Soccer Babe," indicated defendant's desire that he and the victim "overcome our problems between you and me" and "use this whole thing for something positive." The letter further contained an apology for "everything" and for being such a "dumb father." Prior to trial, defendant objected to the letter on the grounds of authenticity and whether the danger of unfair prejudice substantially outweighed the letter's probative value. The trial court, after hearing arguments as to probative value and prejudicial effect, denied defendant's motion *in limine* and noted defendant's objection. Later, when the State sought to admit the letter into evidence, defendant objected solely on the ground that the letter had not been authenticated. This objection was overruled by the trial court. On appeal, defendant renews his challenge to the letter solely on the grounds that the trial court erroneously balanced the prejudicial effect and probative value of the letter.

Initially, we note the State asserts defendant waived his right to appeal this issue by limiting his objection during trial to authenticity. Effective 1 October 2003, N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2003) was amended to add the following: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." The effect this Court has given to the amendment, however, is split.

On 5 April 2005, this Court considered whether an evidentiary issue was preserved for appellate review when a party failed to object at the time the evidence was introduced at trial but had unsuccessfully objected in a previous motion *in limine*. *State v. Ayscue,* 169 N.C. App. 548, 553, 610 S.E.2d 389, 394 (2005). In considering the issue, this Court adhered to our Supreme Court's precedent in *State v. Hayes,* 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) despite citing and considering the amended N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2003). *Id.* This Court held the defendant had failed to preserve the

evidentiary issue for appellate review and was entitled, therefore, only to plain error review.

A little more than one month later, this Court, relying on the amended N.C. Gen. Stat. § 8C-1, Rule 103(a)(2), held that a defendant had not failed to preserve an issue for appellate review where the trial court denied his motion to suppress and defendant did not review his objection during trial at the time the evidence was offered. *State v. Rose*, 170 N.C. App. 284, 288, 612 S.E.2d 336, 339, appeal dismissed by 359 N.C. 641, —— S.E.2d —— (2005).[1] Our holdings in *Rose* and *Ayscue* cannot be reconciled. Accordingly, we adhere to the initial holding of this Court in *Ayscue* for reasons set forth by our Supreme Court in *In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution Control Act*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (holding that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court"). Moreover, defendant is not entitled to plain error review in the instant case due to his failure to allege plain error in his assignments of error or in his brief to this Court. *Accord State v. Truesdale*, 340 N.C. 229, 456 S.E.2d 299 (1995); *State v. Hamilton*, 338 N.C. 193, 208, 449 S.E.2d 402, 411 (1994).

Nevertheless, we note in passing that the trial court did not err in admitting the letter. A trial court may discretionarily exclude relevant evidence if, *inter alia*, "its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2003); *State v. Anderson*, 350 N.C. 152, 174-75, 513 S.E.2d 296, 310 (1999). Defendant argues that referring to one's daughter as "soccer babe" can be innocuous and the apologies and other language in the letter could refer to other events than those to which the victim testified. However, the letter can also be read as an apology for precisely the events for which defendant was put on trial, and defendant's references to his daughter as "soccer babe" (following the accusations for which defendant was incarcerated) may permissibly be construed as indicative of an inappropriate relationship or desire on defendant's part towards her. The meaning and intent of the letter were for the jury to determine.

---

1. Still more recently, on 19 July 2005, this Court expressly held that, "[b]ecause N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) is inconsistent with N.C. R. App. P. 10(b)(1) [regarding appellate review of an evidentiary ruling even though a party fails to object at trial,] . . . the statute must fail." *State v. Tutt*, 171 N.C. App. 518, 524, —— S.E.2d ——, —— (2005).

## V. Prosecutor's Opening Statement

**[5]** Defendant assigns as error the trial court's failure to grant his motion for a mistrial following the State's opening statement, in which the State informed the jury that defendant "admitted to these offenses." The trial court sustained defendant's objection; however, defendant neither moved to strike the statement nor asked for a curative instruction to the jury to disregard the statement. Our Supreme Court has held that, where a trial court sustains an objection but a defendant fails to move to strike that which was objectionable and fails to request a curative instruction, "[t]he trial court [has taken] sufficient action by sustaining the defendant's objection and was not required either to strike the testimony or to give a curative jury instruction." *State v. Barton*, 335 N.C. 696, 709-10, 441 S.E.2d 295, 302 (1994). Moreover, the statement by the prosecutor accurately forecasted the evidence adduced at trial in that Jerry Crater testified that defendant confessed to him that he had physically abused his daughter during an incidence when he "forced himself on her[.]" This assignment of error is overruled.

## VI. Undisclosed Statements

**[6]** In his sixth assignment of error, defendant asserts the trial court erred in allowing the victim to testify that defendant told the victim after the sexual assault that she "need[ed] to take this to the grave with [her]." Defendant objected on the grounds that the statement had not been disclosed and moved to strike the statement, which the trial court overruled. A trial court must, upon motion of a defendant, order the prosecutor to "divulge . . . the substance of any oral statement relevant to the subject matter of the case made by the defendant . . . ." N.C. Gen. Stat. § 15A-903(a)(2) (2003). "As used in the statute, 'substance' means: 'Essence; the material or essential part of a thing, as distinguished from "form." That which is essential.' " *State v. Bruce*, 315 N.C. 273, 280, 337 S.E.2d 510, 515 (1985) (quoting Black's Law Dictionary 1280 (rev. 5th ed. 1979)). Moreover, our Supreme Court has held that "a synopsis of a defendant's oral statements in response to discovery requests complies with the 'substance' requirement of N.C. Gen. Stat. § 15A-903(a)(2)." *State v. Johnson*, 136 N.C. App. 683, 692, 525 S.E.2d 830, 836 (2000) (citing *State v. Weeks*, 322 N.C. 152, 367 S.E.2d 895 (1988)).

In the instant case, the State's report to defendant contained the following statement: "Father . . . [t]old her not to tell anyone." Both the testimony received at trial and the statement contained in the

report given to defendant convey that defendant was telling his daughter not to tell anyone of the sexual assault. While the form was not identical, they expressed the same substance and, as such, the trial court correctly determined there was no violation of N.C. Gen. Stat. § 15A-903(a)(2). This assignment of error is overruled.

VII. Testimony of the Victim's State of Mind

**[7]** Defendant asserts, in his seventh assignment of error, that the trial court erred in allowing the victim's brother to testify as follows in response to how his sister looked while talking to the police following the sexual assault: "She was—She looked like she was not wanting to . . . talk about it, really, but she, I guess, told them anyway." Defendant contends this testimony was "clearly speculative in that the witness could not possibly read [the victim's] mind as to what she wanted on this occasion." Defendant's objection was overruled. Assuming, without deciding, defendant's contention has merit, defendant has failed to show that the testimony by the victim's brother that she was reluctant to talk to the police had any effect on the outcome of the trial, much less that there was a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C. Gen. Stat. § 15A-1443(a) (2003). This assignment of error is overruled.

VIII. Motion to Dismiss

**[8]** Defendant assigns as error the trial court's denial of his motion to dismiss at the close of all the evidence. Specifically, defendant contends "the lack of physical evidence as well as [the victim's] widely varying details of the alleged sexual assault should have resulted in a dismissal of the charges at the conclusion of the trial." We disagree.

In ruling on a motion to dismiss, the trial court considers "the evidence in the light most favorable to the State and gives the State the benefit of every reasonable inference to be drawn therefrom." *State v. Penland*, 343 N.C. 634, 648, 472 S.E.2d 734, 741 (1996). "Contradictions and discrepancies are for the jury to resolve." *Id.* "In deciding whether the trial court's denial of defendant's motion to dismiss violated defendant's due process rights, this Court must determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560,

573 (1979)). Defendant does not specifically attack any of the elements of second-degree sexual offense in the instant case but merely argues that there were inconsistencies and a lack of physical evidence to bolster the victim's testimony. Defendant's arguments are unavailing.

First, we have found, and defendant has cited, no case law that stands for the proposition that there must be some physical evidence to support court testimony in order for that testimony to be sufficient to withstand a motion to dismiss. Second, defendant had ample opportunity to cross-examine the victim with respect to any inconsistencies he perceived existed between the accounts given at trial and those given to medical and police personnel. Third, inconsistencies are expressly left for the jury under well-established precedent. *State v. Rhodes*, 290 N.C. 16, 31, 224 S.E.2d 631, 640 (1976). This assignment of error is overruled.

IX. Motion for Appropriate Relief

**[9]** Finally, defendant has submitted a motion for appropriate relief, asserting he was sentenced in the aggravated range in violation of the recent holding by the United States Supreme Court in *Blakely v. Washington*, 542 U.S. ——, 159 L. Ed. 2d 403 (2004), which was filed during the time defendant's appeal was pending. The trial court, not the jury, made findings in aggravation not admitted by defendant based on a preponderance of the evidence. Specifically, the trial court found in aggravation that defendant took advantage of a position of trust or confidence to commit the offense. Recently, our Supreme Court considered the applicability of *Blakely* under North Carolina law and held that "those portions of N.C.G.S. § 15A-1340.16 which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence are unconstitutional." *State v. Allen*, —— N.C. ——, ——, —— S.E.2d ——, —— (2005). Our Supreme Court further held "that *Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible *per se*." *Id.*, —— N.C. at ——, —— S.E.2d at ——. We hold accordingly and remand for resentencing.

No error in part, remanded for resentencing.

Judges HUNTER and JACKSON concur.