An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-461

Filed 1 April 2026

Hoke County, Nos. 16CR051214-460, 17CR050111-460, 17CR050112-460, 17CR 050113-460, 17CR050114-460, 17CR050115-460, 17CR050116-460

STATE OF NORTH CAROLINA

> v.

MAUREEN RENEE LEE, Defendant.

Appeal by defendant from judgment entered 6 March 2024 by Judge Jessica Locklear in Pitt County Superior Court. Heard in the Court of Appeals 25 February 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Haley A. Cooper, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Maureen Renee Lee appeals from judgments upon a jury verdict finding Defendant guilty of three counts of felony animal cruelty and thirteen counts of misdemeanor animal cruelty. On appeal, she contends that she was denied her

right to a speedy trial and that her punishment was unlawful. For the reasons below, Defendant received a fair trial free from reversible error.

## I. Background

Hoke County Animal Control and the North Star Veterinary Hospital seized various animals from Defendant in July 2016. Defendant initially called the Hospital to get assistance with a horse in her care. Upon seeing the horse's poor condition and numerous other animals in poor condition on Defendant's property, a Hospital representative reached out to Animal Control. The Hospital subsequently assisted Animal Control in the removal, treatment, and boarding of various animals found on Defendant's property.

Nineteen months later, in February 2018, a grand jury indicted Defendant numerous counts of felony and misdemeanor animal cruelty based on the 2016 discovery. Defendant requested a jury trial, and her case appeared on the June 2020 trial calendar. However, prior to this scheduled trial date, Defendant's attorney withdrew, citing online Facebook posts of private attorney-client communications.[1] Defendant's next attorney filed a motion questioning Defendant's capacity.

Following these attorney changes and capacity issues, a grand jury returned superseding indictments on 17 April 2023 for the same offenses along with an additional count which was later removed. Defendant's case was set for trial in May

---

[1] Prior to this attorney's withdrawal, Defendant had two prior attorneys withdraw leading up to the June 2020 trial date.

2023. On the day of trial, Defendant's counsel filed a motion to withdraw based on events occurring with Defendant the previous day. The Court allowed the motion over the State's objection. Defendant's case was later set for the June 2023 administrative term. The trial court appointed Defendant her fourth trial counsel prior to trial, but this attorney withdrew a few weeks later due to personal conflicts. That same month, the trial court appointed Defendant's fifth trial counsel, Mr. King Blue. Seven months later, Mr. Blue filed a second capacity evaluation for Defendant.

Defendant was deemed competent for the second time, and in February 2024 Mr. Blue filed Defendant's first motion to dismiss for a speedy trial violation. The trial court held a motions hearing and subsequently denied Defendant's speedy trial motion stating "Defendant's motion to dismiss due to denial of speedy trial Denied."

The trial court tried Defendant before a jury for the remaining charges. The jury found Defendant guilty of three counts of felony animal cruelty and thirteen counts of misdemeanor animal cruelty. The trial court consolidated Defendant's convictions for a sentence of 5–15 months imprisonment, suspended for 36-months of supervised probation under G.S. 15A-1343.2(d)(3). The trial court also ordered Defendant to pay restitution as a condition of probation in the amount of $9,405.97 to the Hospital. Defendant appeals.

## II.    Analysis

Defendant argues the trial court erred in denying her speedy trial motion, requiring Defendant to pay Hospital restitution, and entering 36-month probation.

Each argument is addressed below.

## A. Speedy Trial

Defendant argues the trial court violated her federal and state constitutional rights to a speedy trial because it dismissed her speedy trial motion without conducting a full evidentiary hearing. U.S. Const. amend. 6; N.C. Const. art. 1, § 18 (stating "justice shall be administered without favor, denial, or delay"). *See State v. Hollars*, 266 N.C. 45, 50 (1965) (citations omitted) (recognizing speedy trial right as fundamental to North Carolina); *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967) (incorporating speedy trial right of the Sixth Amendment of the federal constitution to the states via the Fourteenth Amendment). For the reasons below, we disagree.

### 1. Appellate Review

We review Defendant's constitutional speedy trial argument *de novo. State v. Farook*, 381 N.C. 170, 179 (2022).

The United States Supreme Court established a four-part balancing factor test to determine when a defendant's right to a speedy trial has been violated. *See Barker v. Wingo*, 407 U.S. 514, 530–33 (1972). The factors are: (1) "[l]ength of delay[;]" (2) "the reason for the delay[;]" (3) "the defendant's assertion of [her] right[;]" and (4) "prejudice to the defendant." *Id.* at 530. These factors are balanced together with any other relevant circumstances. *Id.* at 533. North Carolina follows the *Barker*

analysis "in reviewing speedy trial claims under Article I, Section 18 of the North Carolina Constitution." *State v. Webster*, 337 N.C. 674, 678 (1994).

Before this Court can reach the *Barker* analysis, we must determine whether the appellate record is sufficient to conduct appellate review, as the trial court made no findings of fact in its order denying Defendant's speedy trial motion. *See State v. Sheridan*, 263 N.C. App. 697, 705 (2019) (remanding for *Barker* analysis and appropriate findings of fact where the record on appeal was insufficient).

Trial courts are required to provide written findings of fact and conclusions of law when the allegations in the motion are not "conjectural and conclusory [in] nature[.]" *State v. Dietz*, 289 N.C. 488, 495 (1976). Said differently, when a defendant's motion presents questions of fact, a hearing must be conducted; and findings of fact and conclusions of law must be rendered. *Id.*; *State v. Chaplin*, 122 N.C. App. 659, 663 (1996). Evidence presented at a speedy trial motion hearing may consist of statements by attorneys in open court, but this practice is not favored. *See State v. Pippin*, 72 N.C. App. 387, 397–98 (1985).

Defendant's counsel filed her first and only speedy trial motion on 26 February 2024. Defendant's motion recounts facts that Defendant allegedly committed the underlying offenses, her arrest date, attorney withdrawal dates, and health/capacity issues for Defendant. Defendant then quotes *State v. Johnson*, 3 N.C. App. 420 (1969), and *Chaplin*, 122 N.C. App. 659, "yet fails to articulate *why* these cases apply to the circumstances surrounding" her inability to prepare for trial or locate possible

witnesses.[2]  *State v. Ambriz*, 286 N.C. App. 273, 288 (2022) (emphasis added). Defendant fails to allege prejudice in preparation of her defense.  *See State v. Groves*, 324 N.C. 360, 367 (1989) (discussing the burden on a defendant *in a speedy trial motion* to properly allege prejudice, assertion of right, and negligence and willfulness of State).  Additionally, Defendant's motion does not allege a factual dispute which is at the core of whether the trial court must provide written findings.  *See Dietz*, 289 N.C. at 494–95; *Chaplin*, 122 N.C. App. at 663.

Thus, the trial court did not err by denying Defendant's speedy trial motion without making findings of fact.

2. Substantive Review

"Because Defendant's motion[ ] [was] 'conjectural and conclusory [in] nature,' and because '[t]he information before the trial court is not in dispute' . . . 'the failure of the trial court to make findings of fact does not prevent review by this Court[.]' " *Ambriz*, 286 N.C. App. at 294 (citations omitted).

The first factor, length of delay is "presumptively prejudicial" when "post accusation delay . . . approaches one year." *State v. Grooms*, 353 N.C. 50, 62 (2000) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).  "If the rest of the

---

[2] This Court notes paragraphs 16–18 in Defendant's motion are identical to paragraphs 16–18 in the Motion to Dismiss for Speedy Trial Violation Word document (dated June 1999) posted on the Office of Indigent Defense Services motions bank website.  *See* Office of Indigent Defense Services, *Motions Bank*, https://www.ncids.org/get-help/motions-bank/.  These paragraphs also seem to mirror those used by the defendant in *Ambriz*.  286 N.C. App. at 288.

inquiry is triggered, the length of delay functions independently as a factor to be weighed alongside the remaining three factors." *Farook*, 381 N.C. at 178 (citing *Barker*, 407 U.S. at 530).

Here, it has been approximately seven years between arrest/indictment and Defendant's trial. *See State v. Hammonds*, 141 N.C. App. 152, 159 (2000) ("A defendant's right to a speedy trial attaches upon being formally accused of criminal activity, by arrest, or indictment."). Approximately seven years is presumptively prejudicial, and the State concedes such. *State v. Farmer*, 376 N.C. 407, 414 (2020) (stating a delay of over six years "clearly raises a presumption that defendant's constitutional right to a speedy trial may have been breached"). Thus, this factor favors Defendant.

The burden associated with the second factor—the reason for delay—has seemingly been conflated in North Carolina case law with the burden associated with pre-accusation delay under the Fifth and Fourteenth Amendments.

Some North Carolina cases state where the prosecution presents a legitimate reason for the length of delay, it is then the defendant's burden to present evidence showing "actual or substantial prejudice resulting from the delay[.]" *State v. Goldman*, 311 N.C. 338, 345 (1984) (a case involving a Fifth and Fourteenth Amendment *pre-accusation* speedy trial delay claim not a Sixth Amendment *post-accusation* speedy trial claim); *see, e.g. State v. Spivey*, 357 N.C. 114, 122 (2003) (citing "actual, substantial prejudice" standard used in *Goldman's* pre-accusation delay case

for the fourth *Barker* factor in a post-accusation delay speedy trial case).  However, the "actual or substantial prejudice" standard does not apply to a post-accusation delay claim for a speedy trial violation.  *United States v. Marion*, 404 U.S. 307 (1971) (pre-accusation Fifth Amendment violation).  *See also Dietz*, 289 N.C. at 490; *State v. McKoy*, 294 N.C. 134 (pre-accusation delay claims under the due process clause).

Instead, the *Barker* analysis contains a burden for the reason of delay factor, which generally places a burden on a defendant to show the trial delay is due to the prosecution's willful or neglectful actions.  *See Chaplin*, 122 N.C. App. at 663 (citation omitted).  However, where a delay is presumptively prejudicial, there is no burden on the defendant as it is then the prosecution's responsibility to explain the delay. *Farook*, 381 N.C. at 179 (citation omitted).  If the State offers a valid reason for delay, the burden shifts "back" to the defendant to show willfulness or neglect by the prosecution.  *Ambriz*, 286 N.C. App. at 298 (citation omitted).

Here, seven years is presumptively prejudicial; and, thus, the State bore the burden to explain the delay.  *See State v. Farmer*, 376 N.C. 407, 414 (2020) (categorizing a delay of over six years as "extraordinarily long" and sufficient to raise the presumption that a defendant's speedy trial right may have been violated). However, at the speedy trial hearing, the trial court incorrectly placed the initial burden on Defendant, asking Defendant's counsel first "[T]ell me what the defense contends was an intentional delay on the State's part just so I can understand." Notwithstanding this error, the State eventually points to valid reasons for the delay

including Defendant's medical/capacity issues, withdrawal/appointment of four attorneys, and COVID-19. *See State v. Johnson*, 251 N.C. App. 260, 267 (2016) (concluding a defendant's relationship with his counsel should not be weighed against the State); *see also State v. Crisp*, 297 N.C. App. 400, 405 (2024) (citing *State v. Smith*, 1 N.C. 1 (1778)) (" '[N]o [court] business was done' during a scheduled term of court due to 'the smallpox raging then in New Bern.' "). This statement by State's counsel is supported by the record.

Shifting the burden back to Defendant, she failed to show any willful act or neglect by the prosecution, but Defendant merely states the reasons for the post-accusation delay are not attributable to her—citing COVID-19, Defendant's capacity issues, and attorney withdrawals. Thus, based on the record, we attribute part of the delay to Defendant's actions toward her attorneys but even if we do not hold her medical and capacity issues against her we see no actions that can be attributed to the State. *See State v. Spinks*, 277 N.C. App. 554, 565 (2021) (attributing the reason for delay factor to the defendant where the defendant had four attorneys before proceeding to trial and the illness of the State's lead investigator was deemed a "good-faith delay"). This factor weighs in favor of the State.

Regarding the third *Barker* factor, Defendant asserted her right to a speedy trial on the date of trial—approximately seven years after her arrest/indictment. We conclude Defendant's failure to assert the right early in the process, weighs against a defendant's contention that her right has been violated. *Grooms*, 353 N.C. at 63

(holding a three-year delay from indictment to speedy trial assertion weighs against the defendant's contention that he has been denied his right to a speedy trial).

As for the fourth *Barker* factor, Defendant has failed to allege "specific prejudice, such as any alleged unavailability of witnesses given the passage of time, in [her] motion." *Ambriz*, 286 N.C. App. at 303. In doing so, prejudice should be assessed in a light favorable to the defendant—the individual the right was designed to protect. *Barker*, 407 U.S. at 532. These interests include: "(1) avoiding prolonged imprisonment; (2) reducing anxiety of the accused; and (3) creating the opportunity for the accused to assert and exercise their presumption of innocence." *Ambriz*, 286 N.C. App. at 303 (citing *Barker*, 407 U.S. at 532).

Here, Defendant has not shown "actual, substantial prejudice." Defendant was never incarcerated, does not allege anxiety, and merely alleges the inability to locate witnesses and to assist her fifth trial attorney in preparing her defense. *See State v. Lyszaj*, 314 N.C. 256, 262 (1985) ("bald contentions" of prejudice insufficient to support speedy trial claim). *See also Grooms*, 353 N.C. at 63 (quoting *State v. Tindall*, 294 N.C. 689, 695–96 (1978) (concluding a defendant's refusal to cooperate with his attorney resulting in attorney turnover cannot be "use[d] as a vehicle in which to escape justice")). Thus, this factor weighs in favor of the State.

Here, the balance of the four *Barker* factors weighs in favor of the State. While a delay of over seven years from arrest/indictment to trial is presumptively prejudicial, the remaining factors, the reason for delay, assertion of the right, and

prejudice all weigh in favor of the State or are neutral. Thus, on de novo review, we hold the trial court did not err in failing to render findings of fact on Defendant's conclusory speedy trial motion and in denying her speedy trial motion.

## B. Restitution Award

Defendant next argues the trial court erred in granting the restitution award where the restitution worksheet characterized the Hospital as a "victim" under G.S. 15A-1340.34(a). For the reasons below, we disagree; but we remand to correct a clerical error.

Defendant argues the trial court erred in ordering Defendant to pay $9,405.97 in restitution to the Hospital. The restitution imposed on Defendant was entered as part of her probation and such sentencing errors are reviewed de novo. *State v. Mackey*, 209 N.C. App. 116, 120 (2011) (citations omitted). When the alleged sentencing error is clerical, this Court has the power to make the records speak the truth. *State v. Cannon*, 244 N.C. 399, 403 (1956).

A clerical error is "[a]n error resulting from a minor mistake or inadvertence, esp[ecially] in writing or copying something on the record, and not from judicial reasoning or determination." *State v. Jarman*, 140 N.C. App. 198, 202 (2000) (citation omitted); *see also* N.C.G.S. § 1A-1, Rule 60(a) (defining "clerical mistakes"); *see generally Bisanar v. Suttlemyre*, 193 N.C. 711 (1927) (stating a court has the power to correct clerical errors and not judicial errors). In *State v. Blount*, this Court determined the trial court committed a clerical error when it listed a "Mr. Williams,"

whose automobile shop had been broken into as an "aggrieved party" as opposed to a "victim" on the restitution worksheet. 209 N.C. App. 340, 348 (2011). This Court in *Blount* remanded the restitution order to the trial court with instructions to list Mr. Williams as a victim on the restitution worksheet because he met the definition of victim in G.S. 15A-1340.34(a). *Id.*

Here, the Hospital is listed as a "victim" as opposed to an "aggrieved party" on the restitution worksheet. General Statute 15A-1343(d) defines "aggrieved party" as "individuals, firms, corporations, associations, other organizations . . ." "named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant." The Hospital is an organization who suffered a monetary loss due to the services rendered to the animals seized from Defendant. *See State v. Dula*, 67 N.C. App. 748, 751 (1984) (restitution as a condition of probation for monetary loss arising out of the defendant's damage to a stereo). As to the amount of restitution, Defendant fails to argue the evidence was insufficient to support the restitution amount. "Because [D]efendant presents no argument and cites no authority in support of [this] contention[ ], [it is] deemed abandoned." *State v. Augustine*, 359 N.C. 709, 738 (2005); *see* N.C. R. App. P. 28(b)(6).

Thus, we affirm the restitution award but remand to the trial court for correction on the restitution worksheet. *See Blount*, 209 N.C. App. at 348; *State v. Davis*, 123 N.C. App. 240, 242–43 (1996) ("[A] court of record has the inherent power to make its records speak the truth and, to that end, to amend its records to correct

clerical mistakes or supply defects or omissions therein.").

### C. Supervised Probation

Defendant finally argues the trial court violated G.S. 15A-1343.2(d)(3) where it failed to make specific findings to establish a longer period of probation than statutorily prescribed. For the reasons below, we disagree.

Statutory errors are errors of law subject to de novo review. *Mackey*, 209 N.C. App. at 120 (citation omitted). Such errors are preserved absent objection by a defendant. *State v. Meadows*, 371 N.C. 742, 747 (2018).

General Statute 15A-1343.2(d)(3) provides a defendant sentenced to community punishment for a felony shall be placed on probation for a minimum of 12-months and a maximum of 30-months. When the trial court imposes a longer probation than the 30-months, the trial court must make "specific findings." N.C.G.S. § 15A-1343.2(d) (2023).

Defendant did not object to the 36-month probation at the sentencing hearing, but it is nonetheless preserved. Here, the trial court entered "36" for months of probation but did not check the box underneath the 36 indicating the period was longer than prescribed in G.S. 15A-1343.2(d). At sentencing, the trial judge orally reasoned the 36-month probation period "is *because of restitution*." (Emphasis added). *See State v. Wilkerson*, 223 N.C. App. 195, 200 (2012) (the statute merely requires a finding, not a "detailed rationale").

Taken together, the trial court's statement and the lack of the checked box on

the probation worksheet may indicate a mere clerical error. This conclusion is supported by the trial court entering "36" on the judgment worksheet and the trial judge at sentencing attributing the additional six months to restitution. *See State v. Lu*, 268 N.C. App. 431, 434 (2019) (the defendant arguing "the *record* lacks specific findings to justify a 36-month probation period") (emphasis added); *see also State v. Hauser*, 271 N.C. App. 496, 504 n.2 (2020) (reasoning the trial court's pronouncement of 36-month probation during sentencing supported conclusion that failure to check a box on the judgment worksheet constituted a clerical error).

Therefore, we conclude the record supports the imposition of 36-month probation despite the trial court omitting to check the box for a longer probation period on the judgment worksheet. We remand to the trial court for a clerical correction. *See Hauser*, 271 N.C. App. at 504.

III.    Conclusion

For the foregoing reasons, Defendant received a fair trial free from reversible error. The trial court did not err in denying Defendant's speedy trial motion nor providing restitution. The trial court did err in failing to classify Hospital as "aggrieved party" on the restitution worksheet and in failing to check the box on the judgment worksheet when imposing a 36-month probation period. Thus, we remand to correct the restitution and probation clerical errors.

NO ERROR; REMANDED FOR CORRECTION OF CLERICAL ERRORS.

Judges ARROWOOD and STADING concur.

Report per Rule 30(e).